UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHEILA BELLEN,

       Plaintiff,

  - against -

STEVEN WEISER A/K/A STEVEN
WEISER GREENBAUM,

       Defendant.

```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:                          │
│ DATE FILED: 10 | 11 | 67        │
└─────────────────────────────────┘
```

**OPINION AND ORDER**

05 Civ. 8775(PKL)

**APPEARANCES**

MORRISON COHEN LLP
David S. Goldstein, Esq.
909 Third Avenue
New York, NY 10022

Attorney for Plaintiff

VANDENBERG & FELIU, LLP
Morlan Ty Rogers, Esq.
110 East 42nd Street, Suite 1502
New York, NY 10017

Attorney for Defendant

**LEISURE, District Judge:**

This case presents a dispute related to the conveyance of an apartment co-operative.  Plaintiff Sheila Bellen ("Bellen") seeks specific performance and monetary damages from the owner of the apartment, defendant Steven Weiser ("Weiser"), for breach of contract and under the doctrine of promissory estoppel.  Weiser now moves to dismiss the complaint.  He claims that both the breach-of-contract claim and the promissory-estoppel claim are barred under New York's Statute of Frauds.  For the reasons set forth below, Weiser's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

For the purpose of the instant motion to dismiss, the allegations in Bellen's complaint are assumed to be true.  See, e.g., York v. Ass'n of the Bar, 286 F.3d 122, 125 (2d Cir. 2002).  In December 1995, Bellen moved into a one-bedroom co-operative located at 210 East Broadway in New York City (the "Apartment"), owned by her daughter's mother-in-law, Ruth Greenbaum ("Ruth"), and one of Ruth's sons, Weiser.  (Compl. ¶ 5.)  The building's managing agent allowed Bellen to reside in the Apartment upon her execution of a caregiver's permit.  (Id. ¶ 7.)  At the time, Ruth was suffering from various physical infirmities, and she remained in a long-term care facility until her death in November 1997.  (Id. ¶¶ 6, 10, 12.)

1

Throughout Bellen's occupancy of the Apartment, she made monthly maintenance payments and, for much of the time, paid home insurance, including for her own personal property. (Id. ¶¶ 8, 11; Bellen Aff. Ex. C.)[1]  In consideration of this, Ruth promised, before she passed away, to convey the Apartment to Bellen. (Compl. ¶ 11.)  In 1998, Weiser, who lived in California, renewed the promise to convey the Apartment to Bellen in exchange for $50,000 (the "1998 Oral Agreement"). (Id. ¶ 13; Pl.'s Memo. of Law at 4.)  Bellen continued to reside in the Apartment, paying maintenance and buying a gas range "in reliance on the oral agreement and the promises by Ms. Greenbaum and Mr. Weiser to convey the Apartment to her." (Id. ¶ 14; Bellen Aff. Ex. A.)

The Apartment was not conveyed to Bellen, however, and in late 2001, she told Weiser that she would have to look for another place to live if he did not keep his promise to her. (Compl. ¶ 15.)  In response, Weiser agreed to go forward with the transaction (the "2001 Oral Agreement"), and the terms of that agreement were reduced to a January 7, 2002 letter (the "January 7 Letter") signed by Weiser and sent to his brother,

---

[1] Though not attached to her complaint, the Court will consider exhibits in Bellen's affidavit in opposition to the motion to dismiss.  These documents are incorporated in the complaint, and are not "matters outside the pleading."  Fed. R. Civ. P. 12(b); see Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (quoting Cortec Indust., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."))

Matthew J. Greenbaum ("Matthew"). (Id. ¶¶ 16, 17.)  The letter

stated, in relevant part:

> I am finally sending you the notarized
> authorization.  I thank [sic] for your help.  I
> want to make clear that I have signed this
> document for this transaction only.  Any further
> transactions need to be approved by me on an item
> by item basis.

> Shila [sic] Bellen is offering me $ 50,000.00 and
> there is a stipulation that I can use the balcony
> during my visits to New York City.

> At the moment I have no viable bank account so
> the transaction has to come through my daughter
> Hokulani M. Valencia.  Please send any mail to
> her.

(Bellen Aff. Ex. B.)  Enclosed with the letter was a fully

executed Power of Attorney, authorizing Matthew to act for

Weiser in real-estate transactions, estate transactions, and

banking transactions. (Id.; see also Compl. ¶ 17.)

The conveyance was not consummated "because it became

bogged down in procedural wrangling with the Apartment's new

managing agent." (Compl. ¶ 18.)  In May 2004, this managing

agent wrote a letter indicating its intent to evict Bellen

because it believed she was an illegal tenant. (Id. ¶ 19; Bellen

Aff. Ex. D.)  Consequently, Bellen again contacted Weiser, and

Weiser reiterated his willingness to sell the Apartment,

according to the January 7 Letter and "in fulfillment of his and

his mother's promises and the oral agreement with Ms. Bellen."

(Compl. ¶ 20.)  Bellen then undertook to paint the Apartment,

expending $5,750 for labor and materials. (Bellen Aff. Ex. E.)

     In the Fall of 2004, Bellen, with the help of a real-estate

attorney, attempted to complete the transaction with Weiser.

(Compl. ¶ 21; Bellen Aff. Ex. F.)  Weiser responded in January

2005, indicating that he was no longer willing to do so. (Compl.

¶ 21.)  On June 27, 2005, after a new managing agent renewed the

threat to evict her, Bellen moved out of the Apartment and

bought a smaller studio apartment for $385,000. (Id. ¶ 22.)

                            **DISCUSSION**

     Weiser has moved to dismiss Bellen's complaint, pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the

ground that the Statute of Frauds bars both the breach of

contract and promissory estoppel causes of action.  Bellen

claims that the Statute of Frauds is satisfied, and even if it

is not as to the breach-of-contract claim, her partial

performance of the oral agreements excepts her from its

requirements.  Because this case arises under diversity

jurisdiction, 28 U.S.C. § 1332(a)(1), the Court will analyze

these contentions under New York law.  See, e.g., Alfaro v. Wal-

Mart Stores, Inc., 210 F.3d 111, 115 (2d Cir. 2000).

I.   Dismissal Standard Under Rule 12(b)(6)

     The Court must consider the sufficiency of the

complaint under Federal Rule of Civil Procedure 12(b)(6).  "The

court's function on a Rule 12(b)(6) motion is not to weigh the

evidence that might be presented at trial but merely to

                                4

determine whether the complaint itself is legally sufficient."

Festa v. Local 3 Int'l Bhd. Of Elec. Workers, 905 F.2d 35, 37

(2d Cir. 1990).  In so doing, the court must "accept as true all

of the factual allegations set out in plaintiff's complaint,

draw inferences from those allegations in the light most

favorable to plaintiff, and construe the complaint liberally."

Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000) (internal

citations omitted).  As such, a motion to dismiss will be denied

"unless it appears to a certainty that a plaintiff can prove no

set of facts entitling him to relief."  Ryder Energy Distrib.

Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d

Cir. 1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

II.  First Cause of Action:  Breach of Contract

    A.  The January 7 Letter

    Bellen's breach-of-contract claim is, axiomatically,

premised upon the existence of a contract -- namely, the January

7 Letter.  Weiser argues that this purported contract to convey

the Apartment does not satisfy the Statute of Frauds, and thus

moves the Court to dismiss this claim for relief.  As a

threshold matter, the parties do not dispute that the January 7

Letter is subject to the Statute of Frauds.  See Meyer v.

Nelson, 83 A.D.2d 422, 424, 445 N.Y.S.2d 436, 437 (1st Dep't

1981) ("The statute is applicable to the sale of a co-operative

apartment.").

5

Pursuant to New York General Obligations Law § 5-703(2),

> A contract for the leasing for a longer
> period than one year, or for the sale, of
> any real property, or an interest therein,
> is void unless the contract or some note or
> memorandum thereof, expressing the
> consideration, is in writing, subscribed by
> the party to be charged, or by his lawful
> agent thereunto authorized by writing.

N.Y. Gen. Oblig. § 5-703(2) (McKinney 2001). From this, New

York courts have articulated four requirements for a memorandum

to satisfy the Statute of Frauds: (1) it is signed by the party

to be charged; (2) it designates the parties; (3) it identifies

and describes the subject matter; and (4) it embodies all of the

essential terms of a complete agreement. See 160 Chambers St.

Realty Corp. v. Register of New York, 226 A.D.2d 606, 606-07,

641 N.Y.S.2d 351, 352 (2d Dep't 1996); Sheehan v. Culotta, 99

A.D.2d 544, 545, 471 N.Y.S.2d 626, 628 (2d Dep't 1984). At

issue before the Court is the third requirement.[2] If the

---

[2] The fourth requirement, also the subject of some dispute, is satisfied if
"one reading [the memorandum] can understand from it what the agreement is."
Dahm v. Miele, 136 A.D.2d 586, 587, 523 N.Y.S.2d 851, 853 (2d Dep't 1988)
(quoting Mentz v. Newwitter, 25 N.E. 1044, 1046, 122 N.Y. 491, 497 (1890)).
Weiser claims that an essential element missing from the January 7 letter is
consideration. The problem with the January 7 Letter is not consideration,
however, but the ambiguity of the promise itself. As discussed below,
because the subject matter of the promise is not sufficiently clear, the
Statute of Frauds is not satisfied. Because this analysis is dispositive of
the Statute of Frauds issue, the Court need not consider whether the January
7 Letter omits various contract terms. See Simone v. N.V. Floresta, Inc.,
No. 98 Civ. 0268, 98 Civ. 1970, 1999 U.S. Dist. LEXIS 9578, at *20 (S.D.N.Y.
1999) (determining that even where a sufficient description of the subject
matter was present, the Statute of Frauds was not satisfied because
customarily included terms were left for future negotiation); O'Brien v.
West, 199 A.D.2d 369, 371, 605 N.Y.S.2d 366, 368 (2d Dep't 1993) (denying
specific performance where "the memorandum made no mention of a closing date,
the quality of title to be conveyed, adjustments for real estate and/or sales
taxes paid by the sellers, or the risk of loss during the sale period.").

memorandum meets all of the requirements, parol evidence can then be used to identify more precisely the property. See Boyajian v. Casey, 52 A.D.2d 1014, 1014, 383 N.Y.S.2d 714, 715 (3d Dep't 1976). If, on the other hand, the memorandum is insufficient on its face, the writing cannot be cured by extrinsic evidence. See Snay v. Wood, 50 A.D.2d 651, 651, 374 N.Y.S.2d 809, 811-12 (3d Dep't 1975).

The subject matter description must be definite and exact enough to permit its identification with reasonable certainty. See Wacks v. King, 260 A.D.2d 985, 986-87, 689 N.Y.S.2d 298, 299-300 (3d Dep't 1999). Further, "vague or fuzzy descriptive statements will suffice where the evidence, though extrinsic, operates to demonstrate the sellers' lack of ownership of other property in the same general area, thus making clear identification a relatively simple proposition." Piazza v. Sutherland, 53 Misc.2d 726, 728, 279 N.Y.S.2d 640, 642-43 (Sup. Ct. Suffolk County 1967) (citations omitted); see Barber v. Stewart, 275 A.D. 429, 430, 90 N.Y.S.2d 607, 609 (3d Dep't 1949) (listing examples of facts used, such as street numbers, intersecting streets, and adjoining definitely described land, to identify property to the exclusion of other property).

In his motion to dismiss, Weiser alleges that the January 7 Letter and enclosed Power of Attorney do not adequately identify and describe the subject matter of the transaction, and thus

7

fail under the Statute of Frauds.  According to Weiser,

"[n]either document even contains the words 'apartment,' let

alone a reasonable description of the thing allegedly being

sold.  Nor does either document mention the apartment number of

the Apartment or the name or address of the building in which it

is located."  (Def.'s Memo. of Law at 4.)  Bellen argues that

the subject matter is sufficiently identified as the Apartment,

thereby creating an enforceable contract.  In support of this

contention, Bellen primarily relies upon the following language

in the January 7 Letter:  "there is a stipulation that I can use

the balcony during my visits to New York City."  The thrust of

her argument is that because Weiser only owns one apartment in

New York City, "the only apartment that Defendant could possibly

be referencing is the Apartment." (Pl.'s Memo. Of Law at 10.)

Though the exact specificity can vary on a case-by-case

basis, the writing's description must always identify the

subject matter with reasonable certainty.  See Sieger v. Prehay,

16 A.D.3d 575, 575, 791 N.Y.S.2d 657, 658 (granting motions to

dismiss where the letter only referenced "the house" and where

"no property or street address is stated in the letter, nor did

it set forth dimensions, acreage, metes and bounds, or lot

number); Snay, 50 A.D.2d at 651, 374 N.Y.S.2d at 811 (finding

the memorandum insufficient where the only reference to the

property was, "[n]o major changes in the buildings for 3 years

8

-- (such as rooms, windows etc.)"); Barber, 275 A.D. at 430, 90 N.Y.S.2d at 608-09 ("[A]ny lot 150 feet by 107 feet on Turner Lane with a dwelling thereon [] would satisfy the description. This lack of definite specifications makes it impossible to determine the property involved by reference to the contract."). Bellen relies upon two cases to show that the January 7 Letter identifies the Apartment with reasonable certainty. In Piazza v. Sutherland, defendants owned various lands described as "'the oval track,' 'the drag strip,' 17 acres adjoining these, and another five-foot strip adjoining to the extent of about three acres." 53 Misc.2d at 726-27, 279 N.Y.S.2d at 641-42. The court stated that though the description of the land lacked precision, it "len[t] itself to definitive identification." Id. at 727, 642. It was not, the court contrasted, "a writing devoid of any reference to or attempt at description. . . ." Id. Similarly, in Hackal v. Adler, the writing -- "my property --house and land" -- was deemed sufficiently definite to identify the property with reasonable certainty. 234 A.D.2d 341, 342, 650 N.Y.S.2d 792, 793 (2d Dep't 1996).

Here, there is no reasonable certainty as to the subject matter of the January 7 Letter.[3]  Whereas the writings central to

---

[3] Bellen suggests that "if the Court has any doubt or uncertainty concerning the subject matter of the January 7[th] Letter, parol evidence is admissible to provide greater precision." (Pl.'s Memo. of Law at 11.)  According to the very cases Bellen cites to support this proposition, she is incorrect.  See Wells v. Ronning, 269 A.D.2d 690, 691-92, 702 N.Y.S.2d 718, 720 (3d Dep't

9

Piazza and Hackal reference certain properties as the subject

matters, albeit broadly, the January 7 Letter is devoid of any

description of what the subject matter might be.  The memorandum

only references a "stipulation that [Weiser] can use the balcony

during [his] visits to New York City."  As Weiser points out,

the January 7 Letter fails to mention the word "apartment."

This omission is fatal under the Statute of Frauds because there

is no description of what property, if any, is the focus of the

transaction.  That Weiser only owns one apartment in New York

City is of little consequence if there is no indication that an

apartment is, in fact, the subject matter.  Moreover, that

Weiser can "use the balcony" when visiting New York City also

does nothing to illuminate what the subject matter of the

January 7 Letter might be.  Accordingly, the January 7 Letter

does not satisfy the Statute of Frauds because it contains no

definite, identifiable subject matter.

Bellen further argues that the January 7 Letter, a signed

writing, can be combined with other memoranda in order to

---

2000) ("An agreement which creates an interest in real property must describe
the property involved with sufficient definiteness to permit it to be
identified with reasonable certainty.  Once this test is met, parol evidence
is admissible to enable the court to identify precisely the property to which
the contract relates.") (emphasis added and citations omitted); Boyajian, 52
A.D.2d at 1014, 383 N.Y.S.2d at 714 (holding that only if the subject matter
can be described with reasonable certainty would parol evidence be admissible
to identify precisely the property).  Thus, it is a threshold requirement
that a court has reasonable certainty of the subject matter, and only once
this requirement is met may parol evidence be admitted.  Here, because the
Court has a great deal of doubt -- not reasonable certainty -- about the
subject matter of the January 7 Letter, it cannot rely on parol evidence.

constitute a sufficient writing under the Statute of Frauds. Bellen must meet two threshold requirements in order for the Court to consider a combination of writings.  First, she must show that the January 7 Letter establishes a contractual relationship between herself and Weiser.  See Horn & Hardart Co. v. Pillsbury Co., 888 F.2d 8, 11 (2d Cir. 1989) (citing Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 55, 110 N.E.2d 551, 554 (1953)); see also Great Destinations, Inc. v. Transportes Aereos Portugueses S.A.R.L., 460 F. Supp. 1160, 1163 (S.D.N.Y. 1978) ("That writing, although it must contain evidence of the contract, need not contain all of the terms of the contract; other terms may be set out in separate writings, signed or unsigned.").  Second, the ancillary documents must, on their face, refer to the same transaction as the January 7 Letter. Horn & Hardart, 888 F.2d at 11 (citing Crabtree, 305 N.Y. at 56, 100 N.E.2d at 554).  Because, as discussed above, the January 7 Letter does not establish a contract with an identifiable subject matter, Bellen fails to meet the first requirement. Accordingly, the Court cannot consider separate writings, including the unsigned December 9, 2004 letter from Bellen's real-estate attorney to Weiser attaching a contract of sale for the Apartment for $60,000.[4]  (Bellen Aff. Ex. F.)

---

[4] For the same reason, the Court will not consider the other two documents Bellen references in conjunction with the January 7 Letter -- insurance bills she paid for the Apartment and a managing agent's letter notifying Weiser

The Court is mindful of the fact that the parties
themselves may have understood that the January 7 Letter
referenced the Apartment, "but this does not justify relief from
compliance with the provision of a statute, which, in the
interest of public policy, requires contracts for the sale of
land to be in writing in order to be enforced." Barber, 275
A.D. at 430-31, 90 N.Y.S.2d at 609. Bellen's breach-of-contract
claim, as it relates to the January 7 Letter, is therefore
dismissed.

B.   Part Performance Exception to the Statute of Frauds

In lieu of a proper written instrument under the Statute of
Frauds, Bellen alternatively argues that her oral agreements
with Weiser should be enforced because she partially performed
them.   Pursuant to New York General Obligations Law § 5-703(4),
"[n]othing contained in this section abridges the power of
courts of equity to compel the specific performance of
agreements in cases of part performance." N.Y. Gen. Oblig. § 5-
703(4) (McKinney 2001); see also Club Chain of Manhattan, Ltd.
v. Christopher & Seventh Gourmet, Ltd., 74 A.D.2d 277, 281, 726
N.Y.S.2d 627, 629 (1st Dep't 1980) ("While the Statute of Frauds

that he may be illegally subletting his apartment.  Additionally, assuming
arguendo that the January 7 Letter does contain sufficient evidence of a sale
of the Apartment, the second requirement is nevertheless not met as to these
two documents.    The insurance bill and managing agent's letter do not, on
their face, refer to the sale of the Apartment.  Instead, they merely
evidence that Bellen lived in the Apartment, a point that Weiser does not
contest.

12

is a bar to an action on a contract which requires a writing, it

will not prevent a court of equity from enforcing an oral

contract where part performance has taken place and

nonenforcement will result in injustice."). Judge Cardozo

elaborated:

> Not every act of part performance will move
> a court of equity, though legal remedies are
> inadequate, to enforce an oral agreement
> affecting rights in land.  There must be
> performance 'unequivocally referable' to the
> agreement, performance which alone and
> without the aid of words of promise is
> unintelligible or at least extraordinary
> unless as an incident of ownership, assured,
> if not existing. . . .  What is done must
> itself supply the key to what is promised.
> It is not enough that what is promised may
> give significance to what is done.

Burns v. McCormick, 233 N.Y. 230, 232, 135 N.E. 273, 273 (1922);

see also Anostario v. Vicinanzo, 59 N.Y.2d 662, 664, 463 N.E.2d

215, 216 (1983) ("The doctrine of part performance may be

invoked only if plaintiff's actions can be characterized as

'unequivocally referable' to the agreement alleged.  It is not

sufficient . . . that the oral agreement gives significance to

plaintiff's actions.").  Bellen argues that her oral agreements

with Weiser are not subject to the Statute of Frauds because

she: (1) paid all maintenance and insurance for the Apartment;

(2) installed a new gas range in the Apartment following the

1998 Oral Agreement; and (3) expended $5,750 to paint the

Apartment following the 2001 Oral Agreement.

Bellen's payments of maintenance and insurance do not, as a matter of law, constitute part performance of her oral agreement with Weiser. Incident to her tenancy in the Apartment, Bellen had made maintenance payments since 1996, before either of her oral agreements with Weiser, and also had paid insurance for much of that time in order to protect her own personal property. As such, these payments cannot be said to be unequivocally referable to an oral agreement to convey the Apartment. See Christou v. Christou, 109 A.D.2d 1058, 1058, 487 N.Y.S.2d 192, 193 (4th Dep't 1985) (determining that payment of a mortgage is not unequivocally referable to an agreement to convey because "[i]t is equally consistent with a landlord-tenant relationship, and the payment of taxes and the mortgage could be considered rent for the use of the land"); Kolodziej v. Kolodziej, 54 A.D.2d 228, 231, 388 N.Y.S.2d 447, 449 (4th Dep't 1976) (finding no part performance where plaintiff paid taxes and insurance as he always had done).

Similarly, Bellen's improvements to the premises are not unequivocally referable to an agreement to convey the Apartment. See Pentony v. Saxe, 2 A.D.3d 1076, 1077, 769 N.Y.S.2d 636, 638 (3d Dep't 2003) ("Although it is undisputed that plaintiff expended sums to paint, clean and generally maintain the premises after taking occupancy, such conduct is as referable to a tenancy as it is to a sale."). Bellen nevertheless relies on

14

a series of cases that hold that improvements to the premises, when combined with the payment of money, may be sufficient for part performance. See Panetta v. Kelly, 17 A.D.3d 163, 165, 792 N.Y.S.2d 455, 457 (1st Dep't 2005) (finding a question of fact where payment of full purchase price and funding premises' improvements were "singularly referable to the oral contract"); Tuttle, Pendelton & Gelston, Inc. v. Dronart Realty Corp., 90 A.D.2d 830, 831 455 N.Y.S.2d 830, 831 (2d Dep't 1982) (holding, where plaintiff had moved into the premises and paid rent for several years in compliance with the lease, that "the expenditure by the plaintiff of a substantial amount of money for improvements and alterations is of some significance in determining whether it had entered into an enforceable lease"); Club Chain, 74 A.D.2d at 283, 427 N.Y.S.2d at 630 (holding that plaintiff's alteration to the property, combined with the payment of higher rent pursuant to a new lease, raised a question of fact to be explored at trial); Snay, 50 A.D.2d at 651, 374 N.Y.S.2d at 812 (finding that the combination of paying the purchase price and expending money to improve the premises necessitated a trial).

Bellen's reliance on these cases is misplaced. They are each distinguishable from the instant action because, unlike here, plaintiffs had begun to make payments as purportedly required under the respective oral agreements, thereby lending

15

greater significance to improvements made upon the properties.

Here, on the other hand, Bellen has not at all performed either

of her purported obligations under the oral agreements, namely

paying any of the $50,000 or permitting Weiser to use the

Apartment's balcony during a visit to New York City.  Standing

alone, then, the improvements to the Apartment do not constitute

part performance of the oral agreements.  See Triology Variety

Stores, Ltd. v. City Prods. Corp., 523 F. Supp 691, 696-97

(S.D.N.Y. 1981).  In Triology, plaintiffs claimed that

defendant's oral promise to renew a sublease was not within the

purview of the Statute of Frauds because plaintiffs had made

improvements costing $10,000. Id. at 695.  The Court disagreed:

"Because the sublease does not call for plaintiffs to make

improvements, such improvements can hardly be seen as

unequivocally referable to an oral agreement to renew that

sublease." Id. at 696.  In this light, the "part performance"

alleged is not at all "part" of the oral agreement. Id.

Instead, the improvements here can be explained by a number of

expectations Bellen may have had, such as continued tenancy in

the Apartment[5] or even "preparatory steps taken with a view

---

[5] Because the managing agent sent a letter to the Apartment threatening to
evict an illegal subtenant, Bellen emphasizes that she would not have spent
over $5,000 to paint the Apartment unless she had agreed to become the owner.
(Pl.'s Memo. of Law at 17.)  This argument does not help Bellen satisfy the
legal standard of N.Y. Gen. Oblig. § 5-703(4) because her decision to paint
the Apartment cannot be said to unequivocally refer to an oral agreement to
buy the Apartment.  It does, however, sound in promissory estoppel, as

16

toward consummation of an agreement in the future." Anostario,
59 N.Y.2d at 664, 450 N.E.2d at 216. While Bellen's
improvements give some significance to her oral agreements with
Weiser, the improvements are not unequivocally referable to such
agreements. See id. Accordingly, Bellen's breach-of-contract
claim also fails under the partial performance exception to the
Statute of Frauds. The first cause of action is therefore
dismissed.

## III. Second Cause of Action: Promissory Estoppel

Bellen's second cause of action arises under the doctrine
of promissory estoppel. To survive a motion to dismiss a
promissory estoppel claim, a plaintiff must adequately plead:
(1) a clear and unambiguous promise; (2) reasonable and
foreseeable reliance; and (3) an injury to the promisee caused
by that reliance. See Triology, 523 F. Supp. at 696-97 (citing
James King & Son, Inc. v. DeSantis Constr. No. 2 Corp., 97
Misc.2d 1063, 1066, 413 N.Y.S.2d 78, 81 (Sup. Ct. 1977)).
Where, as here, the underlying contract is rendered
unenforceable by the Statute of Frauds, a plaintiff must prove
an unconscionable injury to satisfy the third requirement. See

---

discussed below. See Triology, 523 F. Supp at 696 ("Plaintiffs therefore
have failed to state a claim based on part performance of an oral agreement.
Rather, plaintiffs' claim that they would not have been willing to expend
$10,000 on improvements for premises that they would occupy for a relatively
short time and on a business that could be forced to close upon expiration of
the present sublease, in the absence of an oral agreement, sounds in
promissory estoppel. . . .").

Philo Smith & Co., Inc. v. Uslife Corp., 554 F.2d 34, 36 (2d Cir. 1977) ("The strongly held public policy reflected in New York's Statute of Frauds would be severely undermined if a party could be estopped from asserting it every time a court found that some unfairness would otherwise result."); see also Cyberchron Corp. v. Calldata Sys. Dev., Inc., 47 F.3d 39, 44 (2d Cir. 1995); Merex A.G. v. Fairchild Weston Sys., Inc., 29 F.3d 821, 825-26 (2d Cir. 1994).

Weiser's central argument is that Bellen cannot show unconscionable injury because her inability to buy a cheaper apartment is merely pecuniary loss, nothing more than the natural consequence of Weiser's non-performance.[6] See Philo Smith, 554 F.2d at 36 ("[I]t is difficult to imagine a case in which the mere failure to seek an uncertain prospective benefit could ever generate a sufficient level of unconscionability to warrant the application of [promissory estoppel]."); Mobile Data Shred, Inc. v. United Bank of Switz., No. 99 Civ. 10315, 2000

---

[6] Weiser also contends that Bellen fails to establish the second element of promissory estoppel. He argues that Bellen's concern in late-2001 that Weiser would not go through with the transaction vitiates the reasonable-reliance element. (Def.'s Reply Memo. of Law at 13.) Weiser supports this proposition with a case in which plaintiff, a bidder at an auction, had knowledge that final approval of the bid was subject to bankruptcy court review. See SECA Leasing Ltd. P'ship v. Nat'l Can. Fin. Corp., 159 B.R. 522, 526 (N.D. Ill. 1993) ("SECA was in a position to know that its bid, although accepted at the auction, could be rejected by the bankruptcy court."). This case is patently inapposite; Bellen's reliance, despite some uncertainty, is far more reasonable. Additionally, while Bellen did admit some concern in late-2001 that Weiser might not convey the Apartment (Bellen Aff. ¶ 21), such concern only arose before the 2001 Oral Agreement. After that point, Bellen believed the transaction would be finalized based upon assurances from Weiser. (Id. ¶¶ 25, 27.) Thus, as pleaded, Bellen's reliance on Weiser's promise was reasonable.

U.S. Dist. LEXIS 4252, at *13 (S.D.N.Y. Apr. 5, 2000) ("[A] plaintiff must demonstrate injuries beyond those that flow naturally from the defendant's non-performance or from the plaintiff's continuing performance of the unenforceable agreement."). Bellen alleges more, however, than the loss of a prospective opportunity. She claims that Weiser "strung [her] along for seven years, promising her that the Apartment was going to be conveyed to her. . . ." (Pl.'s Memo. of Law at 22.) She points out that because the building's managing agent threatened to evict her in May 2004, the only explanation for expending over $5,000 to paint the Apartment in July 2004 was that there was an agreement in place for her to purchase the Apartment. See Triology, 523 F. Supp at 699 ("Certainly, expenditures of $10,000.00 on lasting improvements to the premises would make little sense in the absence of the promise or assurance of a long term tenancy."). At this stage of the proceedings, Bellen has established a cause of action based upon promissory estoppel arising out of her oral agreements with Weiser. See id. at 698 (determining that the requirement of unconscionability was met by plaintiffs' allegations that it made capital expenditures and improvements to the premises once defendant promised to renew the sublease); Salatino v. Salatino, 13 A.D.3d 512, 512, 786 N.Y.S.2d 570, 571 (2d Dep't 2004) (affirming denial of motion to dismiss where plaintiff alleged

19

that she managed and maintained properties in reliance upon oral conveyances); Buddman Distribs., Inc. v. Labatt Imps., Inc., 91 A.D.2d 838, 839, 458 N.Y.S.2d 395, 397 (4th Dep't 1982) ("Whether the agreement is one that is removed from the operation of the Statute of Frauds . . . and whether the circumstances are so egregious as to render it unconscionable to permit the defendant to invoke the Statute of Frauds, are questions that should not be determined on the pleadings, but should await a full determination of the facts upon the trial."). As Judge Duffy opined in a case involving equitable estoppel in the context of the Statute of Frauds, "[t]he burden of proof will, of course, weigh heavily on plaintiff since the Statute of Frauds is not easily avoided. However, giving the complaint the liberal construction to which it is entitled, I am not prepared to foreclose plaintiff's proof on the questions raised therein." Special Event Entm't v. Rockefeller Ctr., Inc., 458 F. Supp. 72, 77 (S.D.N.Y. 1978) (internal citations omitted). Accordingly, Weiser's motion to dismiss Bellen's second cause of action is denied.

IV. Leave to Amend the Complaint

The Court finally addresses whether Bellen should be granted leave to amend her complaint as to her first cause of action. Federal Rule of Civil Procedure 15(a) allows a litigant to amend a pleading by leave of court. Fed. R. Civ. P. 15(a).

20

The Rule provides that "leave shall be freely given when justice so requires," id., and, accordingly, the Second Circuit has followed the U.S. Supreme Court's direction that permission to amend a claim "should be freely granted." Oliver Schs., Inc. v. Foley, 930 F.2d 248, 252 (2d Cir. 1991) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). When a district court grants a defendant's motion to dismiss a plaintiff's cause of action, as the Court has done here as to the first cause of action, the "'usual practice'" dictates that the court grant the plaintiff leave to amend its complaint. Id. at 253 (quoting Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)). The decision to grant leave to amend is wholly within a district court's discretion, see id.; Kaster v. Modification Sys., Inc., 731 F.2d 1014, 1018 (2d Cir. 1984) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971)); a decision to deny the motion, however, must be based upon a valid ground. Oliver Schs. Inc., 930 F.2d at 252; Kaster, 731 F.2d at 1018 (citing Foman, 371 U.S. at 182). A district court may deny leave to amend where leave would be futile. See Halpert v. Wertheim & Co., 81 F.R.D. 734, 735 (S.D.N.Y. 1979) ("If the complaint, as amended, could not withstand a motion to dismiss, a motion to amend need not be granted.").

As discussed above, Bellen's first cause of action may be analyzed in two ways: (1) as a breach-of-contract claim based

21

upon the January 7 Letter; and (2) as a breach-of-contract claim based upon part performance of the oral agreements. As a matter of law, the January 7 Letter must satisfy the Statute of Frauds on its face before parol evidence will be considered. Because it does not, it would be futile to give Bellen leave to replead as it would relate to the January 7 Letter. See Weissman v. Seiyu, Ltd., 98 Civ. 6976, 2000 U.S. Dist. LEXIS 6908, at *9, 12-13 (holding that leave to replead would be futile because parol evidence cannot be used to cure any Statute of Frauds deficiencies). On the other hand, amending the complaint would not be futile as to Bellen's alleged part performance of the oral agreements. Under the liberal standard of Rule 15(a), Bellen should have the opportunity to amend her complaint in order to state a claim that her conduct was unequivocally referable to the oral agreements with Weiser. See id. at *10 (citing Anostario, 59 N.Y.2d at 664, 463 N.E.2d at 216) ("Nevertheless, I cannot help but observe that plaintiff faces an uphill battle in demonstrating that his actions, standing alone, were 'unintelligible or at least extraordinary' and explainable only with reference to the oral agreement."). Accordingly, plaintiff may amend her complaint to plead a claim alleging part performance, but may not amend her complaint to plead a claim based upon the January 7 Letter.

## CONCLUSION

For the reasons set forth herein, Weiser's motion to dismiss is hereby GRANTED as to Bellen's first cause of action and DENIED as to Bellen's second cause of action. Bellen has TWENTY DAYS from the date of this Order to seek leave to replead, only as it relates to her part performance of the oral agreements with Weiser. The parties are ORDERED to appear before this Court at 500 Pearl Street, Courtroom 18B for a status conference on December 13, 2007 at 10:30 a.m.

**SO ORDERED.**

**New York, New York**

October ___11___, 2007

_____

U.S.D.J.

23